# THE ATTORNEY GENERAL
# OF TEXAS


**WILL WILSON**
**ATTORNEY GENERAL**

May 17, 1957

Mr. E. B. Camiade, Chief Accountant
Texas State Parks Board
Austin, Texas

Dear Mr. Camiade:

Opinion No. WW-122

Re: Proper depository for dividend checks from stock given State Parks Board for maintenance of Varner-Hogg State Park.

We quote the following from your letter requesting our opinion on the above captioned subject:

"Enclosed is a photostat copy of a deed dated December 3, 1956, from Ima Hogg to the State Parks Board of the State of Texas conveying 52.67 acres in Brazoria County, Texas, for State Park purposes. ...

". . . We have, in our possession, stock certificates evidencing 330 shares of Kennecott Copper Corporation common stock and 100 shares of Liggett and Myers Tobacco Company common stock. These stock certificates are in the name of the State Parks Board of the State of Texas.

"We have received a check from Liggett and Myers Tobacco Company payable to State Parks Board of the State of Texas in the amount of $200.00 and a check from Kennecott Copper Corporation payable to State Parks Board of the State of Texas in the amount of $495.00 in payment of dividends on said shares of stock.

"In view of the provision in said deed that:

"'all of the cash dividends from said stock shall be used only for the operation, maintenance and improvement of the premises hereinabove granted, and no other, and that the title to said stock shall vest and remain in said State Parks Board for so long a time as said premises shall be used for State Park purposes, as herein provided',

we respectfully request your opinion on the following question:

"'Where is the State Parks Board authorized to deposit the dividend checks in order that an account may be established whereby the State Parks Board can carry out the provisions of said deed?'"

In addition to the provision which you quoted in your letter of request, the deed contains the following provision:

"TO HAVE AND TO HOLD the above described premises and shares of stock, together with all and singular, the rights and appurtenances thereto in anywise belonging unto the said State Parks Board of the State of Texas so long as said premises are continuously held and used by said Grantee, and its successors, as a State Park under the covenants, terms and provisions hereof, and no longer; and if the same be not used for said purposes, or at any time cease to be used for such purposes, or at any time be used for any other purposes save and except those which are herein expressly described and mentioned, then and thereupon this conveyance and transfer shall be null and void and said premises and shares of stock, together with any additional or substitute shares which may be hereafter acquired by way of merger, consolidation, stock dividends, split-ups, and/or spin-offs, by the issuing corporations or their successors, shall immediately thereafter revert to Grantor herein, her heirs or assigns, and it shall be lawful, without suit, but only upon the giving of reasonable notice to the State Parks Board of the State of Texas, or its successors, for Grantor herein, her heirs or assigns, to re-enter and repossess said premises and repossess said shares of stock, and thereafter peaceably to hold and enjoy said premises and shares of stock as if these presents had not been made; and no act or omission on the part of Grantor, her heirs or assigns, save the failure to give such notice, shall be or constitute a waiver of the operation or enforcement of such condition; and upon such occurrence the State Parks Board of the State of Texas hereby expressly binds and obligates itself to re-transfer, re-assign, and deliver unto Grantor, her heirs or assigns, and all certificates evidencing said shares."

Article 6068, Title 103, V.C.S., authorizes the Board to accept title on behalf of the State to any tract of land deemed suitable by the Board for park purposes. There is no express authorization to the Board to accept personal property, nor is there in Title 103 any express statutory provision containing a directive as to the propse depository for cash resulting from a gift for the maintenance of a State park. We therefore deemed it necessary first to determine whether the Board was authorized to accept the gift of stock. We have concluded that the Board is impliedly authorized to receive donations of personal property for the maintenance of a State park for the following reasons.

It is settled as the law of this State that "public officers and governmental and administrative boards possess only such powers as are necessarily conferred upon them by law or necessarily implied from the powers so conferred." 34 Tex.Jur., 440, 441, Sec. 67. (Emphasis supplied throughout.)

Although it is true that statutes which prescribe and limit the exercise of official duties are strictly construed in respect to the powers conferred and the manner of their exercise, it is equally well settled that a law which confers a power or imposes a duty upon an officer or board carries with it by implication the authority to do such things as are reasonably necessary to carry into effect the power granted or the duty imposed. 34 Tex.Jur. 443-444, Sec. 68.

The Parks Board as an agency of the State is authorized to and charged with the responsibility of acquiring and maintaining a system of public parks for the benefit of the people generally for benevolent purposes, promoting health, happiness and the general welfare of the citizens of this State. State v. Brannan, 111 S.W.2d 347 (Tex.Civ. App. 1937, error ref.).

Since the Board is specifically authorized by Article 6068 to accept donations of land for State parks purposes, and since under the above cited decision it is charged with the duty of maintaining a system of public parks, it has implied authority to accept cash donations or, as in this case, donations of stock given in connection with the grant of land for park purposes for the purpose of maintaining the lands donated.

Article 6069 contains the following provision:

". . . The purpose of this law is to initiate a movement looking to the establishment eventually of a system of State parks for the benefit of the people, secured either by a donation or purchase, or established on any land owned by the State available for such purposes."

It is noteworthy that this statement of purpose does not require the donations, which will help lead to the establishment of a system of State parks, to be in land. Such an interpretation would deny the Board a power essential to the accomplishment of the principal purpose for which it was created.

Section 1 of Article 6070b reads as follows:

"The Texas State Parks Board is hereby authorized and empowered to acquire State park sites by purchase, gift or otherwise, and to improve, beautify and equip, and to contract with any person, firm or corporation for the improvement, beautification or equipment of the State parks of this State to such an extent as to said Board might be deemed advisable. The authority herein given to purchase is limited to two years from the effective date of this Act."

Although the purchasing authority granted under this particular section has expired, the State Parks Board is still authorized and empowered to acquire park sites by purchase, gift or otherwise, to improve them, etc., and to contract with any person, firm or corporation for their improvement or equipment. Being authorized to contract for such purposes, the Board is impliedly authorized to accept gifts for the same purposes.

The Texas Legislature clearly intended that the Parks Board establish and maintain a parks system and that it receive donations therefor. These donations lighten the tax burden of the people. This intent being evident, the statutes should not be so construed as to nullify the will of the Legislature and cause a conflict with the apparent legislative purpose. We therefore hold that the Parks Board may exercise the power to accept gifts of personal property, this additional power being necessary to an efficient discharge of their duties and necessarily implied from the broad powers given them.

We pass to a consideration of the proper depository for the dividend checks. It is clear that the funds which have been and will be received from this stock never became "State funds" in the sense that they could be placed in the general revenue fund and appropriated by the Legislature. The stock dividends are impressed with a trust and may be expended only for the purposes stated in the deed of gift. Furthermore, we think it is apparent that it was not the intention of the settlor that these funds be placed within some special fund in the State Treasury because the State's title to the stock and any revenues

therefrom would terminate should the State fail to comply with the condition of the gift. In such event, any revenues then on hand could not revert to the Grantor, her heirs or assigns upon giving notice to the State Parks Board because a legislative appropriation would be necessary to withdraw said revenues from the State Treasury.

For this reason you are advised that the revenues should be deposited not in the State Treasury, but with the State Treasurer to be held by him as custodian and as a special trust fund for the maintenance of the Varner-Hogg State Park as authorized by Article 4393a, V.C.S. Article 4393a provides, in part, as follows:

> "All moneys and other securities placed in the hands of the State Treasurer in trust for any legal purpose shall be received by the State Treasurer on a deposit receipt issued by the State Comptroller as provided in Article 4354, Revised Civil Statutes of Texas, 1925, as amended . . . Such moneys or other securities shall be held in trust by the State Treasurer in like manner as the Departmental Suspense Account is held under Article 4388, Revised Civil Statutes of Texas, 1925, as amended. . ."

Cf. Manion v. Lockhart, 131 Tex. 175, 114 S.W.2d 216 (1938); Friedman v. American Surety Co. of New York, 137 Tex. 149, 151 S.W.2d 570 (1941).

## SUMMARY

The State Parks Board has implied power to accept gifts of personal property for the purpose of maintaining a State Park. Cash dividends from stock given State Parks Board for sole purpose of maintaining certain granted premises as Varner-Hogg State Park, title to the stock to remain in the Board for so long a time as said premises shall be used for State Park purposes and no longer, are impressed with a trust and should be deposited with the State Treasurer,

to be held by him as custodian as a special
trust fund for the operation, maintenance
and improvement of Varner-Hogg State Park.

Yours very truly,

WILL WILSON
Attorney General

By Marietta McGregor Payne
Marietta McGregor Payne
Assistant

MMP:gs

APPROVED:

OPINION COMMITTEE
H. Grady Chandler, Chairman

Elbert M. Morrow

Edwin P. Horner

Riley Eugene Fletcher

REVIEWED FOR THE ATTORNEY GENERAL
BY:
      Geo. P. Blackburn